Filed 4/17/25  Snieders v. A Center for Children & Family Law CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| MONIQUE SNIEDERS et al., | |
| Plaintiffs and Appellants, | G062880 |
| v. | (Super. Ct. No. 30-2021-01229401) |
| A CENTER FOR CHILDREN & FAMILY LAW et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order and judgment of the Superior Court of Orange County, Richard Y. Lee, Judge. Affirmed.

David S. Wilson III for Plaintiffs and Appellants.

Collins + Collins, Edward J. Riffle, Robert R. Yap and James C. Jardin for Defendants and Respondents Loni Klein, A Center for Children & Family Law, Inc., Sheryl L. Edgar and Tisha Lene Harman.

Callahan, Thompson, Sherman & Caudill, Joan E. Trimble for Defendant and Respondent, Kristin Bachman.

Wood, Smith, Henning & Berman, Brian L. Hoffman and Nicholas M. Gedo for Defendant and Respondent Christina Appleton.

\* \* \*

Plaintiff Monique Snieders sued defendant Loni Klein, her law partners Sheryl L. Edgar and Tisha Lene Harman, and their law firm, A Center for Children and Family Law (the attorney defendants), and two therapists, defendants Kristin Bachman and Christina Appelton (the therapist defendants), in connection with an ongoing marital dissolution and child custody case, *M.B. v. R.B.* (Super.Ct. Orange County, No. 14D001781) (the family law case). Snieders alleged claims on behalf of herself and for the minor children including fraudulent inducement, intentional infliction of emotional distress, negligent infliction of emotional distress, and professional negligence. Defendants filed motions pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] which, as relevant here, the court ultimately granted.[2]

Klein was appointed as minors' counsel and the therapist defendants were appointed as psychologists in the family court case. Snieders labors mightily to convince us that defendants are being sued for their "decisions," not their communications, in that case. But as much as she might try, the "decisions" she claims defendants made cannot be separated from their duties to the court and therefore, their communications with the court

---

[1] Subsequent statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The court denied anti-SLAPP motions on behalf of the minor children as to the attorney defendants only. There is no cross-appeal of the court's decision as to those motions.

and the parties; the cases she cites to the contrary are distinguishable. Any damages she claims certainly cannot be separated from those communications. The acts Snieders complains of constitute protected speech, are subject to the litigation privilege, and also fail the minimal merit test. We therefore affirm the order and the judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *Background*[3]

We summarize the background facts as succinctly as possible. Snieders, who describes herself in the operative complaint as a "model citizen," with a "spotless record," was formerly married to Ryan B. He is the biological father of their two children, a son, L.B., born in 2012, and a daughter, G.B., born in 2008. The complaint alleged the daughter, G.B., had

---

[3] The record citations in Snieders' briefs fail to comply with the California Rules of Court. For example, she cites extensively to her own declaration submitted in opposition to the anti-SLAPP motion, but instead of citing to the pages in the record, she cites to paragraphs in the 40-page long declaration, providing a page number only for the first page of the declaration. More troublesome is that she refers to documents attached to that declaration with only a paragraph reference in the declaration, rather than the page on which the document can be found. The exhibits to the declaration are over 400 pages long. She also cites to the complaint by paragraph rather than page number. Further, rather than citing to the record in support of specific facts, she sometimes writes lengthy paragraphs with a long string of supposed record references at the end. This makes it exceedingly difficult for the court to locate a reference to a specific fact in the record.

Failing to cite directly to the correct page in the record violates the California Rules of Court, rule 8.204 (a)(1)(C). To the extent we are unable to readily locate a document or fact to which Snieders refers, we disregard that fact for failure to cite to the record properly. (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856; see *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 28.)

a diagnosed case of obsessive compulsive disorder (OCD), which she exhibited by picking and clawing at her skin, causing cuts, sores, and scrapes.

Snieders and Ryan B. divorced in 2014, and the issue of child custody has been hotly contested in their divorce proceeding. Snieders accused Ryan B. of a drinking problem, which he denied. Ultimately, they shared custody, with Snieders having the children 70 percent of the time.

According to the complaint, in 2016, Ryan B. was involved in an incident where he discharged a handgun into the wall of his residence. He injured his finger, and the bullet traveled to his neighbor's unit. The children were staying with Ryan B. at the time. The Orange County Social Services Agency (SSA) became involved and substantiated a finding of severe neglect against Ryan B. SSA directed Snieders and Ryan B. to obtain a stipulated order in family court giving Snieders legal and physical custody. Otherwise, SSA would refer the matter to dependency court. The stipulated order was entered in November 2016. Snieders had discretion to decide if and how Ryan B. could visit the children.

After various proceedings, Ryan B. was allowed supervised visits at Snieders' discretion. During one visit, Ryan B. and the paternal grandmother allegedly told G.B. that she should tell an adult that the open sores on her body due to her OCD were caused by her mother's abuse. G.B. subsequently told a camp counselor that scratches and cuts on her arm were caused by Snieders during an incident at a gas station while on vacation. In the complaint, Snieders described the incident. She stated that during a stop, she was "frustrated" with G.B.'s conduct and "grabbed [G.B] firmly by the arm and forcefully escorted her to the car." L.B., when questioned later, "did not dispute" his sister's story. Snieders claimed he was "intimidated by his older sister and dad."

The camp counselor reported this to social services. Ryan B. apparently learned of this incident, and during a visit, he called SSA and the Orange County Sheriff's Department (OCSD) to report the alleged abuse. Snieders went to Ryan B.'s residence to pick up the children, but the OCSD deputies on the scene refused to demand Ryan B. return the children to her, telling her to take the matter up with family court.

In July 2020, Snieders filed an ex parte application seeking an order for Ryan B. to return the children to her care. The court denied the motion. The children have remained with Ryan B. since July 2020. At the same time it denied the ex parte application, the court appointed attorney Loni Klein as minors' counsel, with each parent to pay half of Klein's fees. The court found that it was in the best interest of the children to appoint counsel to represent their interests.

B. *Abuse Investigation and Orders*

At this time, SSA was investigating the abuse allegation against Snieders. SSA interviewed the involved parties. Snieders explained that G.B. had received mosquito bites and been scratched by hay during their vacation, which were exacerbated by G.B.'s scratching due to her OCD. A medical doctor (who Snieders alleged "worked for" SSA) allegedly found, based on photographs of the marks, that "while the marks in question were consistent with either mosquito bites or Snieders' fingernails digging into [G.B.], there was one particular mark that was more likely caused by a third person given its location on the inside of [G.B.]'s bicep, and the angle of the mark." After her investigation, the social worker substantiated the allegation, stating her opinion that it was more likely than not that Snieders had caused at least one of the marks in question.

In July 2020, SSA met with Snieders and Ryan B. to discuss voluntary family services. Snieders alleged she diligently complied with voluntary family services, which ended in October 2020.[4] Snieders appealed the finding of child abuse but had not received a hearing date as of the date the complaint was filed.

Klein and Snieders met by phone on September 2, 2020, along with Snieders boyfriend, David Wilson, who is also her attorney of record in this case. Snieders alleged Klein told her that Klein "would not permit Snieders to see her children unless it was a visit supervised by a licensed monitor." Klein reminded her there was a substantiated finding of child abuse. Snieders eventually "acquiesced" and "began aggressively litigating the custody case." Snieders alleged Klein also required her to sign a stipulated order regarding family therapy (the September 2020 order).

The September 2020 order stated, among other things, that defendant Kristin Bachman, a psychologist, would provide family therapy to Snieders, Ryan B., and the children, and defendant Christina Appleton, a psychologist who had previously treated G.B., would provide individual therapy to the children.

With respect to contact and parenting time, the September 2020 order stated it was "temporary . . . pending further Order of the Court." Snieders was to "have parenting time . . . as mutually agreed upon between the parties in writing on the Talking Parents Application and approved by minor's counsel via email." The parties would seek input from Bachman as to the children's feelings regarding contact with Snieders. The parties also

---

[4] It appears this concluded SSA's involvement. All further orders were through family court.

agreed that Snieders' parenting time would be professionally monitored by a monitor agreed upon by the parties and approved by Klein until Bachman "and/or minor's counsel recommends" that professional monitoring is no longer necessary, the parties stipulated otherwise, or the court so ordered.

Snieders signed the September 2020 order and the court approved and signed it. Snieders and Ryan B. were both represented by counsel, who signed the stipulation in that capacity.

The complaint alleged that "Klein assured her and her boyfriend . . . that unsupervised visitation or shared custody would likely be permitted after only a couple supervised visits." The complaint also alleged that Klein, who had referred other "business and custody matters" to Bachman, had no intention of doing so in order to allow herself and Bachman to "rack up fees."[5] Further, the complaint claimed that "Klein exceeded her statutory authority" when "she required Snieders to sign the order re family therapy as a condition" of visitation.

Therapy began with both psychologists, as did supervised visitation with L.B. Snieders did not allege any inappropriate conduct by Bachman during these visits. The complaint alleged that Klein "rejected" her requests for unsupervised visits. Snieders alleged she has had no visits with G.B. since December 2020.[6]

---

[5] With respect to Klein's fees, later, in January 2022, the court found both parties indigent dating back to July 21, 2020 minus the fees already paid. Klein was relieved as counsel and reappointed under the indigent panel.

[6] In January 2022, the court ordered reunification therapy for Snieders and G.B. with a new therapist.

Meanwhile, the complaint alleged Snieders shared copious information with Klein establishing that she did not abuse her daughter. These included police reports dating back to 2014 relating to Ryan B.'s drinking. In addition to historical events, Snieders asserted the evidence proved Ryan B.'s girlfriend was doing most of the child care since the children had been in his custody. In sum, this evidence was intended to prove that Ryan B. was an unfit father, that his drinking problem persisted, and that he had lied under oath on various occasions. Snieders provided this information to Klein, who did not change her view with respect to the children's visits with Snieders. Snieders also provided evidence about G.R.'s condition and behavior that she claimed established that she had not abused G.R.

A few months later, in November 2020, Snieders sought ex parte relief from the September 2020 order, including relieving Klein as minors' counsel. The court denied the request pending a hearing. At some point thereafter, Snieders refused to participate in therapy with Bachman.

The custody case began trial in April 2021, and as of the date of the complaint, it was still ongoing. Snieders alleged that on the witness stand, the SSA social worker, after being presented with the evidence adduced in discovery, stated she would not make a finding of abuse if she knew at the time what she knew now. She also alleged the judge stated that due to limited court time, the trial could continue until the children were 18 years old. (Snieders does not cite to the portion of the record that includes the social worker's testimony or this statement by the judge.)

C. *Procedural History*

On January 31, 2022, while the custody case was pending, Snieders filed the operative complaint. She sued the attorney defendants for fraudulent inducement, intentional infliction of emotional distress, and

8

negligent infliction of emotional distress. The children sued the attorney defendants for the same causes of action in addition to professional negligence.

Snieders and the children sued Bachman for intentional infliction of emotional distress, negligent infliction of emotional distress, and professional negligence. She sued Appleton for fraudulent inducement, intentional infliction of emotional distress, and negligent infliction of emotional distress. The children sued Appleton for fraudulent inducement, intentional infliction of emotional distress, negligent infliction of emotional distress, and professional negligence. Snieders and the children sought damages for emotional distress and therapy caused by the alleged wrongdoing, and Snieders also sought damages for lost income. She also sought punitive damages against the attorney defendants.

Each defendant brought an anti-SLAPP motion, seeking to dismiss the entire complaint. The matters were fully briefed. In a lengthy and thorough tentative, which later became the court's ruling, the court granted all of the anti-SLAPP motions with the exception of the attorney defendants' motions as to the children. Snieders now appeals.

DISCUSSION

I.

ANTI-SLAPP STATUTORY FRAMEWORK AND STANDARD OF REVIEW

"The anti-SLAPP statute states: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the

9

claim.' [Citation.] The purpose of the anti-SLAPP statute is to dismiss meritless lawsuits designed to chill the defendant's free speech rights at the earliest stage of the case. [Citations.] The statute is to 'be construed broadly.'" (*Timothy W. v. Julie W.* (2022) 85 Cal.App.5th 648, 657.)

As relevant here, section 425.16, subdivision (e) defines an "'act in furtherance of a person's right of petition or free speech'" as: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

The anti-SLAPP analysis involves two steps. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) In deciding whether the plaintiff's cause of action is subject to an anti-SLAPP motion, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts on which the liability or defense is based." (§ 425.16, subd. (b)(2).)

"'On appeal, we review the trial court's decision de novo, engaging in the same two-step process to determine, as a matter of law, whether the defendant met its initial burden of showing the action is a

10

SLAPP, and if so, whether the plaintiff met its evidentiary burden on the second step.'" (*Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1162.)

## II.

## PROTECTED ACTIVITY AS TO SNIEDERS' CLAIMS AGAINST THE ATTORNEY DEFENDANTS

We must first decide whether the challenged claims arise from defendants' acts in furtherance of their right of free speech or right of petition. (§ 425.16, subd. (e).) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062–1063 (*Park*).) "[T]he focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'" (*Id.* at p. 1063.) We "consider the elements of the challenged claim and what actions by the defendant supply those elements."[7] (*Ibid.*) "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) The relevant causes

---

[7] The parties suggest we frame this analysis in terms of evaluating whether the ""'principal thrust or gravamen'"" of the challenged claims constitutes protected activity. We must be cautious using this language following the California Supreme Court's decision in *Baral, supra,* 1 Cal.5th 376. That framework may only be used "to determine whether particular acts alleged within the cause of action supply the elements of a claim [citation] or instead are incidental background." (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012.)

11

of action as to the attorney defendants are intentional infliction of emotional distress and negligent infliction of emotional distress.[8]

We begin with the context in which Klein was acting in this case. She was appointed as counsel by the court to represent the minors, in furtherance of their best interests. The order appointing Klein states that counsel for a child has various duties, including the duty to "[r]epresent the child's best interests" and "[g]ather evidence that bears on the best interest of the child and present that admissible evidence to the court in any manner appropriate for the counsel of a party." Minors' counsel also has various rights, including reasonable access to the child and certain records, standing to seek affirmative relief on the child's behalf, and with the court's approval, to seek independent psychological or other examination of the child for purposes of the pending proceeding. (See *A.F. v. Jeffrey F.* (2022) 79 Cal.App.5th 737, 752.) This context is a key part of Klein's role in the case.

Klein's declaration stated that since her appointment, "all my communications with Ms. Snieders, her boyfriend David Wilson, who associated in as Ms. Snieders's co-attorney of record in the marital dissolution proceedings and is also Ms. Snieders's attorney of record in the civil lawsuit, and Ms. Snieders's family law attorney Ms. Mumtaz were solely in my capacity as [G.B.] and [L.B.]'s minors' counsel; and were for the purpose of representing [G.B.] and [L.B.]'s best interests and welfare and assessing their best interests in relation to custody and visitation issues. This includes my communications with Ms. Snieders, her boyfriend, and her

---

[8] On page 74 of her opening brief, Snieders informed us for the first time that she is "hereby dropping her appeal with respect to her fraudulent inducement claim against the [attorney defendants]."

attorney concerning the child abuse finding against Ms. Snieders; Ms. Snieders's monitored/unmonitored parenting time with [G.B.] and [L.B.]; family therapy with Dr. Bachman; and minors' therapy with Dr. Appleton." Klein's declaration stated the same with regard to her communications with the children, Ryan B., the therapist defendants, and witnesses in the child abuse case.

The key claim offered by Snieders is that Klein's "decisions" were the basis of her complaint, specifically the decision to "deprive" Snieders of "anything but supervised visits with [L.B.], and from any type of contact with [G.B.]" Those "decisions," however, were all in the context of her role as counsel for the minor children. Moreover, a "decision" is meaningless until it is communicated to someone.

All of Klein's communications in her role as minors' counsel are protected as petitioning activity. "Numerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity." (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 154.) Courts "have adopted a fairly expansive view of what constitutes litigation-related activities." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908.) Litigation-related activities within the scope of the anti-SLAPP statute include negotiation and execution of a settlement (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546), and conducting an investigation (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777). "'[A] cause of action "arising from" defendant's litigation activity may appropriately be the subject of a section 425.16 [special] motion to strike.' [Citations.] 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056.) Purported injuries to party

13

opponents or other nonclients resulting from litigation-related activity is also within the scope of the anti-SLAPP statute. (*Loanvest I, LLC v. Utrecht* (2015) 235 Cal.App.4th 496, 504.) There is no evidence here that any of Klein's actions were outside the scope of her role as appointed minor's counsel.

We now turn to the elements of each cause of action to determine whether "'the defendant's activity . . . that gives rise to his or her asserted liability . . . constitutes protected speech or petitioning.'" (*Park, supra,* 2 Cal.5th at pp. 1062–1063.) Snieders' claims against Klein are for intentional infliction of emotional distress and negligent infliction of emotional distress. The elements of intentional infliction of emotional distress are "(1) defendant engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of decency in a civilized community) with the intent to cause, or with reckless disregard to the probability of causing, emotional distress; and (2) as a result, plaintiff suffered extreme or severe emotional distress." (*Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1273.) As to negligent infliction of emotional distress, "the "'*negligent* causing of emotional distress is not an independent tort but the tort of *negligence. . . .*" [Citation.] "The traditional elements of duty, breach of duty, causation, and damages apply."'" (*Eriksson v. Nunnink* (2015) 233 Cal.App.4th 708, 729.)

There are numerous problems with each of these claims, but as far as the scope of the anti-SLAPP statute is concerned, Snieders asserts Klein's "decisions" constituted both intentional and negligent infliction of emotional distress.

First, Snieders' assertions that Klein made unilateral decisions about visitation and contact are not supported by the evidence, which she carefully cherry-picks in an effort to avoid adverse facts. The September 2020

14

order was a *stipulation*. As Klein stated in her declaration, its terms "were mutually discussed and agreed to by Ms. Snieders through her attorney of record in the dissolution proceedings, Tullo Mumtaz, Esq., and [Ryan B.] through his attorney of record, Barbara Hammers, Esq. The stipulation was signed by Ms. Snieders, her family law attorney Ms. Mumtaz, [Ryan B.], and his family law attorney Ms. Hammers. Judge Sykes approved the stipulation and entered an order regarding contact/parenting time, family therapy, and minors' therapy pursuant to the terms of the stipulation." Snieders does not contend that she did not sign the stipulation or that she did not have access to legal advice when she did so.

Further, the September 2020 order states that Snieders would have supervised visits with the children "until Dr. Bachman and/or minor's counsel *recommends* that Petitioner/Mother's parenting time with the minor children shall no longer be professionally monitored by a monitor, further order of the Court or written agreement between the parties." (Italics added.) The language of the stipulation, therefore, requires communicative conduct between the parties or with the court. To "recommend" a change requires communication about that change.

Snieders' assertion that Klein made a unilateral decision about visitation was also undermined by further acts of the court. Before the September 2020 order was entered into, in July 2020, the court denied Snieders' request to return the children to her custody. The court also denied relief from the September 2020 order in November of that year, reserving the issue for trial. All of these litigation activities demonstrate that Klein's actions were not those of a dictator, to whom all decision-making power about custody was improperly delegated. The September 2020 order says on its face that changes to that agreement were subject to recommendations of the

15

professionals, a court order, or agreement by the parties. Ultimately, decisions were made by the court, not Klein, and Klein's role was limited by the rights and duties set forth in the order appointing her. Klein's "decisions," by their very nature, required communicative acts, and those acts constituted petitioning activity within the scope of the anti-SLAPP statute.

The cases Snieders cites are inapposite. In *Park,* an employment discrimination case based on the wrongful denial of tenure based on national origin, the court concluded that a letter communicating the denial of tenure (not the denial itself) was not protected activity. (*Park, supra,* 2 Cal.5th at p. 1062.) The court reached this conclusion because the discrimination claim depended on the denial itself and not on the grievance proceeding or any evaluations of him during the tenure process. (*Id.* at p. 1068.) Park's complaint was "'based on the act of denying plaintiff tenure based on national origin. Plaintiff could have omitted allegations regarding communicative acts or filing a grievance and still state the same claims.'" (*Ibid.*) Unlike the communication of the tenure decision in *Park*, Klein's activities cannot be separated from her role as minors' counsel in the family law case. *Park* clarifies that "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Id.* at p. 1060.) In this case, the wrong complained of are Klein's acts while acting as minor's counsel in an ongoing family law case. All of her acts were part and parcel of that role.

The other case Snieders cites, *California Back Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, involved a medical group suing a lawyer for the failure to satisfy liens. There, the injury-producing conduct was not the lawyer's actions during or before litigation,

but was only incidental to the dispute. It bears no resemblance to the case at hand. Here, all of Klein's acts were inseparable from her role as minors' counsel, and her alleged "decisions" cannot be separated from her communications in that role.

Because we find the attorney defendants satisfied their burden on the first step of the anti-SLAPP analysis, we turn to the second step.

## III.

### SUCCESS ON THE MERITS AS TO SNIEDERS' CLAIMS AGAINST THE ATTORNEY DEFENDANTS

"If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral*, *supra*, 1 Cal.5th at p. 384.) The plaintiff must do so with admissible evidence. (*Kreeger v. Wanland* (2006) 141 Cal.App.4th 826, 831.) "We decide this step of the analysis 'on consideration of "the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b).) Looking at those affidavits, "[w]e do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff."'" (*Burrill v. Nair* (2013) 217 Cal.App.4th 357, 378–379, disapproved in part in *Baral*, at p. 396, fn. 11.) "[A] defendant that advances an affirmative defense to plaintiff's claims bears the burden of proof on the defense." (*Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 969.)

### A. Litigation Privilege

"Civil Code section 47, subdivision (b) provides absolute immunity for publications and statements made in an 'official proceeding authorized by law.' [Citations.] The privilege extends to those made before the proceeding 'if they have some logical connection to the suit and are made

17

to achieve the objects of" the proceeding." (*Howard Jarvis Taxpayers Assn. v. Powell* (2024) 105 Cal.App.5th 955, 971.)

The privilege is broad. It applies "'to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.] Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved. [Citations.] [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.] Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege. [Citation.] It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1057.)

Because we have already rejected Snieders' argument that her complaint was based on "decisions" rather than communications, we need belabor that point no further. All of the claims against Klein were in connection with the family law litigation and have a logical relation to that action. Accordingly, the litigation privilege applies.

B. *Snieders' Claims Against Klein Fail to Demonstrate Minimal Merit*

Even if the litigation privilege did not preclude Snieders' claims, she has failed to demonstrate, with evidence, the requisite minimal merit to support any alleged cause of action.

18

1.  Intentional Infliction of Emotional Distress

As stated above, a claim for intentional infliction of emotional distress requires proof of the following elements: "(1) defendant engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of decency in a civilized community) with the intent to cause, or with reckless disregard to the probability of causing, emotional distress; and (2) as a result, plaintiff suffered extreme or severe emotional distress." (*Berry v. Frazier, supra,* 90 Cal.App.5th at p. 1273.)

In Snieders' briefs on appeal, she cites no evidence whatsoever. She instead claims it is "manifestly obvious" that she has met her burden. She asserts, without citation to authority, that "completely alienating children from their loving mother who practically raised them by herself for 11 and 1/2 years would induce serious emotional distress in the children and mother sufficient to support" an intentional infliction of emotional distress claim. But this claim requires more than an assertion of "serious emotional distress." It requires extreme and outrageous conduct, of which there is no evidence. It also requires intent to cause, or reckless disregard for the probability of causing, emotional distress. There is no evidence at all to support either of these elements of the cause of action, and because this is an evidentiary motion, mere allegations are insufficient. Accordingly, even if the litigation privilege did not apply, this cause of action would fail for lack of minimal merit.

2.  Negligent Infliction of Emotional Distress

As mentioned above, negligent infliction of emotional distress "is not an independent tort but the tort of *negligence*. . . ." [Citation.] "The traditional elements of duty, breach of duty, causation, and damages apply." (*Eriksson v. Nunnink, supra*, 233 Cal.App.4th at p. 729.) Snieders cites,

without discussion, *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, "[t]o the extent [her] claim is based on a [direct victim] theory . . . ." She claims the duty in this case is based on her "preexisting relationship with the lawyer Defendants." But she had no preexisting relationship with Klein prior to the family law case, and she does not claim otherwise. She has not established a duty in this case that would support a negligent infliction of emotional distress claim under a "direct victim theory."

As to bystander liability, Snieders cites *Keys v. Alta Bates Summit Medical Center* (2015) 235 Cal.App.4th 484, with no explanation or discussion. Accordingly, she has waived any argument that bystander liability applies in this case. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Both the litigation privilege and the failure to cite any evidence in support of her claims foreclose any possibility of success on the merits. Snieders has not met her burden at the second stage of the anti-SLAPP analysis as to Klein.[9]

## C. *Harman, Edgar, and the Law Firm*

The trial court found that the complaint did not allege direct liability on the part of any of these defendants, but vicarious liability because these defendants are Klein's partners and law firm. Snieders first contends the complaint's allegations demonstrate these parties are "directly liable," providing a string citation to paragraphs in the complaint without any further discussion. These are neither adequate record citations nor

---

[9] We need not discuss the additional defense of quasi-judicial immunity raised by the attorney defendants.

20

persuasive arguments. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

Snieders then goes on to apparently concede the point and claim the trial court should have allowed her to amend her complaint to add claims of "negligent supervision." First, she provides no citations to the record showing where she made such a request, instead stating that they were included in the "oppositions to the motions." This is not an adequate record citation. (*Del Real v. City of Riverside, supra*, 95 Cal.App.4th at p. 768.) Even if those requests are somewhere to be found in the record, an opposition to an anti-SLAPP motion does not constitute a valid motion to amend her complaint.

Moreover, Snieders offers no facts to demonstrate that any of these defendants had any role in "supervis[ing]" Klein, who was the partner of Edgar and Harman, not their employee, and an owner of the defendant law firm. We agree with the trial court that any liability on the part of these defendants would be vicarious, not direct. Because Klein's actions are protected by the anti-SLAPP statute, for the same reasons, Snieders has not pleaded any cognizable claim against the remaining attorney defendants.

IV.

PROTECTED ACTIVITY AS TO PLAINTIFFS' CLAIMS AGAINST THE THERAPIST DEFENDANTS

Because the same standard of review and law applies to the claims against the therapist defendants, we need not repeat it here. Like Klein, both Bachman and Appleton's roles were established and defined by the September 2020 order as stipulated to by the parties and ordered by the court.

21

As to Bachman, she was ordered to conduct family therapy with both parents and the minor children. "The purpose of therapy shall be to assist the parents in co-parenting and the family in communicating with one another, building trust and having age appropriate boundaries and consequences, assisting the parents in implementing and using appropriate non-physical discipline with the minor children, the parents abstaining from any substance abuse in addition to addressing any concerns the minor children have with either of their parents." The parties were instructed to seek input from Bachman regarding the children's feelings about contact with Snieders. With regard to Appleton, the children were to participate in individual therapy with her.

There are five claims against the therapist defendants. Both Snieders and the children allege claims against both therapists for intentional infliction of emotional distress and negligent infliction of emotional distress. All plaintiffs also allege a fraudulent inducement claim against Appleton. Snieders alleges a claim for professional negligence against Bachman, and the children allege a claim for professional negligence against both therapists.

We begin with the intentional infliction of emotional distress and negligent infliction of emotional distress claims. For the same reasons as discussed above with respect to Klein, we conclude the role of the therapists was defined and constrained by the court order appointing them. Further, any "decisions" they are alleged to have made cannot be separated from their communicative conduct in the context of the family law case. Accordingly, we find they met their burden under the first step of the anti-SLAPP analysis as to these claims.

22

As to the fraudulent inducement claim against Appleton (brought, confusingly, by the children as well as Snieders), the basis for this claim is that "Appleton, with intent to deceive, told Snieders that the individual therapy Appleton would furnish the minor children pursuant to the [September 2020 order], should Snieders sign it, would occur in-person, not remotely with the minor children attending from Ryan [B.]'s condo. Upon information and belief, Appleton knowingly made this false statement to Snieders to induce her sign the order re family therapy. Snieders justifiably relied on the representation, because signing the [September 2020] order re family therapy was the only way she could see the minor children . . . and she had no reason to distrust Appleton."

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The elements of fraudulent inducement are inherently communicative, and the language of the complaint concedes this claim is based not on any purported "decision," but on Appleton's communications with Snieders. Appleton has met her burden on the first step as to this claim.

As to the professional negligence claims, the elements of such a claim are "'"(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."'" (*Paul v. Patton* (2015) 235 Cal.App.4th 1088, 1095.)

23

The complaint alleged that the actions of Bachman and Appleton "were not those of a reasonably careful psychologist and a better result would have been obtained by [the minor children] and, in the case of Bachman, Plaintiff Snieders as well, if the actions of these psychologists had been those of reasonable psychologists. Bachman and Appleton intentionally and thoroughly alienated the minor children from their loving mom despite knowing, based on their education and training as psychologists, that such alienation would be catastrophic to [the minor childrens'] emotional wellbeing and potentially dangerous to the physical safety of [the minor children]."

According to the plain language of the complaint, Snieders' fundamental complaint about the therapist defendants was that their conduct during therapy "intentionally and thoroughly alienated the minor children." These were not "decisions" the therapists made, but allegations regarding the way they conducted themselves and statements they made during therapy. These are essentially and inherently communicative acts during court-ordered therapy in the context of ongoing family court litigation. Therefore, the acts were protected conduct within the meaning of the anti-SLAPP conduct, and the therapist defendants have met their burden as to the first step of the anti-SLAPP analysis.

V.

SUCCESS ON THE MERITS AS TO THE PLAINTIFFS' CLAIMS AGAINST THE

THERAPIST DEFENDANTS

A. *Litigation Privilege*

For the same reasons as discussed above with regard to Klein, the litigation privilege applies to all of the claims against the therapist defendants. All of the alleged wrongful acts occurred within the context of their court-ordered appointments in the family law matter. Simply put,

24

everything the therapist defendants are alleged to have done was in connection with the family law litigation and had a logical relation to that action. (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057.)

*B. The Plaintiffs' Claims Against the Therapist Defendants Fail to Demonstrate Minimal Merit*

      1.  Intentional and Negligent Infliction of Emotional Distress

For the same reasons discussed above with respect to Snieders' claims against Klein, plaintiffs have failed to demonstrate minimal merit as to either of these claims.

      2.  Fraudulent Inducement

With regard to plaintiffs' claim of fraudulent inducement as to Appleton, all that the briefs state about this claim is "[Snieders] can meet the elements of her fraudulent inducement claim against Appleton." She cites to a jury instruction with no further discussion or argument.

First, this says nothing about the children's claim against Appleton, which is not even supported by the allegations in the complaint – this claim is entirely based on the statement about remote therapy Appleton allegedly made to Snieders to induce her to sign the September 2020 order. The claim brought by the children has no merit whatsoever.

Second, as to Snieders, she fails to offer any evidence that Appleton either intentionally misrepresented this fact to her, or that this statement caused reliance and subsequent damage. She offers, simply put, nothing, and that is not enough to sustain the claim at the second step of the anti-SLAPP analysis.

      3.  Professional Negligence

Again, this claim lacks minimal merit because it is not supported by any evidence. Plaintiffs' briefs point to no evidence about what the

therapists said or did that violated professional standards. We reiterate that an anti-SLAPP motion is not a demurrer, but an *evidentiary* motion. The briefs must point to admissible evidence, supported by citations to the record, that support their claim. Plaintiffs have failed to do so.

Because the litigation privilege precludes plaintiffs' claims, and because those claims would fail the minimal merit test even without the litigation privilege, we need not discuss quasi-judicial immunity as an additional ground for upholding the trial court's decision granting the anti-SLAPP motions as to the therapist defendants.

VI.

BACHMAN'S EVIDENTIARY OBJECTIONS TO SNIEDERS' EVIDENCE

In an argument of less than one page in her opening brief and one sentence in her reply brief, Snieders asserts the court should not have granted Bachman's objection to certain documents she submitted in opposition to the motion. Snieders does nothing to describe or distinguish these documents from each other, or even identify them. She does not reference the pages on the record on which the documents may be found, merely referencing the page in the record on which Bachman's objections begin.

Without meaningful argument, Snieders cites six jury instructions without explaining their relevance, and asserts the documents were "offered to show Respondents' state of mind and the documents' impact on Respondents" without further explanation. Her reply brief is even less helpful. This is not a meaningful, reasoned argument, and accordingly, we deem this issue waived. (*Del Rio v. City of Riverside*, *supra*, 95 Cal.App.4th at p. 768.)

26

## DISPOSITION

The order and the judgment are affirmed. The defendants are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.